**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **JESSE C. TRENTADUE,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **FEDERAL BUREAU OF INVESTIGATION and FEDERAL BUREAU OF INVESTIGATION, OKLAHOMA CITY FIELD OFFICE,** | **Case No. 2:04CV772 DAK** |
| **Defendants.** | |

This matter is before the court on (1) the FBI's Motion to Amend Order on Motion for Partial Summary Judgment or, Alternatively, for Relief from Order; (2) Plaintiff's Motion to Strike and Motion for Finding of Civil Contempt; (3) Plaintiff's Amended Second Motion to Strike Regarding the Declaration of David M. Hardy and FBI Defendants' Reply Memorandum; (4)  Plaintiff's Third Motion to Supplement the Record; (5) and objections to various filings.

A hearing on all the motions was held on November 10, 2005.   At the hearing, Jesse Trentadue represented himself, and the FBI was represented by Carlie Christensen.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to the motions.

The court has also reviewed the documents that were submitted *in camera* by the FBI,

and it has also reviewed the memoranda and other documents submitted by the parties in January 2006–after the hearing on the motions.   Now being fully advised, the court enters the following Memorandum Decision and Order.

## I.  BACKGROUND

This case involves Plaintiff Jesse Trentadue's ("Plaintiff") request for documents from the Federal Bureau of Investigation and Federal Bureau of Investigation's Oklahoma City Field Office (collectively, "the FBI").   Plaintiff's request for documents was made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff filed this action in August 2004, alleging that the FBI had failed to provide certain documents that were responsive to his FOIA request.

Plaintiff's request for documents stems from his investigation into the alleged murder of his brother, Kenneth Trentadue, by government agents.  Plaintiff's brother was found dead in an isolation cell while in federal custody for a parole violation.  While officials ruled the death a suicide, Plaintiff unearthed significant evidence of foul play.  Plaintiff's theory is that his brother apparently looked very similar to Richard Lee Guthrie, who allegedly was one of Timothy McVeigh's accomplices in the Oklahoma City bombing and a member of the Mid-West Bank Robbery Gang.   Plaintiff believes that his brother was killed during an overly aggressive interrogation by federal agents–who believed that Kenneth Trentadue was Richard Lee Guthrie.

During the course of investigating the death of his brother, Plaintiff has uncovered evidence that he believes demonstrates that the Department of Justice and/or the FBI likely had prior knowledge about the plan to bomb a series of federal buildings, including the Alfred P.

2

Murrah Building in Oklahoma, but that they did nothing to prevent that attack.

Specifically, Plaintiff claims that he has discovered that the Southern Poverty Law Center ("SPLC") and the FBI had conducted a joint sting operation at a white supremacist compound in Oklahoma, known as Elohim City, that Timothy McVeigh was a visitor to Elohim City (which was also a paramilitary training camp), and that another visitor to Elohim City was Richard Lee Guthrie.  Prior to McVeigh's execution, Plaintiff claims that he received a telephone message stating that McVeigh believed that Trentadue's brother was killed while being interrogated by the FBI because of the FBI's mistaken belief that Trentadue was actually Richard Lee Guthrie. Approximately nine months after Kenneth Trentadue was allegedly murdered, Guthrie was found hanging in his cell while in federal custody.

Plaintiff believes that the FBI knew, through its informant, that the Murrah Building would be bombed and failed to do anything to prevent the attack.  He also claims that the FBI may have also been responsible for training McVeigh and the others who planned and carried out that attack.  In pursuit of proving his theory, Plaintiff submitted a request for documents, pursuant to FOIA.  He sought to obtain "documents and/or records which directly or indirectly, reported upon, concerned, referenced or referred to Morris Dees' and/or the *Southern Poverty Law Centers*' involvement with and/or connection to the Elohim City, OKBOMB, BOMBROB, Tim McVeigh, Richard Guthrie, Terry Nichols, Dennis Mahon, Robert Millar, Michael Brescia, Peter Langan and/or Andreas Strassmeir, including all contacts Dees or the SPLC may have indirectly had with the foregoing individuals through informants."   Plaintiff also sought the 302 Report of an interview he gave to the FBI on or about August 12, 1996, concerning the *Mid-West*

3

*Bank Robbery Gang*, Kenneth Michael Trentadue, and Richard Lee Guthrie.   Plaintiff

subsequently filed the instant action, alleging that the FBI had failed to produce documents that

were responsive to his FOIA request.

## II.  HISTORY OF THIS CASE

This case has a convoluted history, in that the relief sought by Plaintiff has changed along

the way in light of Plaintiff's unearthing of related documents.  In his previous motion for partial

summary judgment, filed on October 20, 2004, Plaintiff sought two specific documents and/or

records subject to his FOIA request.  Specifically, he sought

(1)     an electronic *Memorandum* from FBI Headquarters to the FBI's Oklahoma City Field

Office, and Omaha Field Office discussing an undercover operation involving the SPLC

at a white supremacist compound in Oklahoma, which *Memorandum* further states that

the SPLC had an informant at that compound who was aware that Tim McVeigh and

others intended to blow up the Murrah Federal Building.  This Memorandum was dated

approximately January 4, 1996 and addressed the subject of "DOMESTIC

SECURITY/TERRORISM."  It concerned FBI Case No. 174A–OC-56120 and FBI Case

No. 91A-OM-41859, which were, respectively the Oklahoma City bombing investigation

known as "OKBOMB" and the "Mid-West Bank Robbery Investigation known as

"BOMBROB."

(2)     The Form 302 Report of an August 21, 1996 interview Plaintiff gave to representatives of

the DOJ, including Oklahoma City FBI Agent Tom Linn.

Plaintiff subsequently obtained from other sources two redacted teletypes from the

Director of the FBI that Plaintiff claimed fell squarely within the scope of his FOIA request but

had not been produced.  Consequently, Plaintiff questioned the type of search that the FBI had

conducted and also questioned the veracity of the FBI's assertion that the 302 Report did not

exist.

On November 22, 2004, the FBI, moved to dismiss the case because, it claimed, its

search for the requested documents was reasonable, even if it did not discover all responsive

documents.  The FBI also refused to produce unredacted copies of the teletypes requested by

Plaintiff, claiming various exemptions under FOIA.

After a hearing on various motions in February 2005, the court issued an Order on May

5, 2005, granting Plaintiff's motion for partial summary judgment and denying the FBI's motion.

The court ordered  the FBI to produce all requested records by June 15, 2005.   The court found

that the FBI's search was not reasonably calculated to discover the requested documents.  The

court also ordered the FBI to search specific case files, to produce unredacted copies of various

documents, and to produce other documents responsive to Plaintiff's FOIA request.

The FBI subsequently filed a Motion to Amend Order or for Relief from Order,

essentially claiming that the court should reconsider its May 5, 2005 Order because the FBI's

search was reasonable, and, even if it was not, the court did not adequately analyze whether the

documents were exempt under the claimed FOIA exemptions.   The FBI later filed a Motion to

Stay the May 5, 2005 Order, pending resolution of its Motion to Reconsider.  In response,

Plaintiff filed a Motion to Strike the Motion to Amend and for a Finding of Civil Contempt.

In June 2005, the court stayed the May 5, 2005 Order until the court resolved the Motion

to Amend.  At that time, the court ordered the FBI to produce to Plaintiff any documents that the FBI had discovered in searching the specific files listed in the May 5, 2005 Order that were responsive to Plaintiff's FOIA requests (as the FBI interpreted them) and to which the FBI did not assert any FOIA exemptions.[1]

Subsequently, on July 21, 2005, the FBI produced 17 redacted documents to Plaintiff, even though the FBI had asserted various FOIA exemptions as to all 17 documents.  Following the production of documents, significant briefing occurred regarding the disclosure.  Plaintiff has objected to the redactions contained in the documents and has argued that the FBI's search is still inadequate.  On the other hand, the FBI claims that its redactions are appropriate and that it was not even required to produce these documents because they are not responsive to Plaintiff's FOIA request.  The FBI, upon request of the court, produced all 17 documents to the court *in camera* so that the court could determine the validity of the redactions (i.e., the asserted exemptions).

The current posture of this action is that Plaintiff seeks all 17 documents in unredacted form.  He also appears to seeks a court order requiring the FBI to conduct a search using Morris Dees' name and the "SPLC" abbreviation.  Plaintiff also highlights many documents that are

_____

[1]  Significant confusion and argument has arisen concerning Plaintiff's request for "documents and/or records which directly or indirectly, reported upon, concerned, referenced or referred to Morris Dees' and/or the Southern Poverty Law Centers' involvement with and/or connection to the Elohim City, OKBOMB, BOMBROB, Tim McVeigh, Richard Guthrie, Terry Nichols, Dennis Mahon, Robert Millar, Michael Brescia, Peter Langan and/or Andreas Strassmeir, including all contacts Dees or the SPLC may have indirectly had with the foregoing individuals through informants."  The FBI's interpretation of this request to require either Morris Dees' name *or* the Southern Poverty Law Center's name *and* at least one of the other listed names is the reasonable interpretation.

referenced in the July 21, 2005 disclosures, but which have not yet been produced.

The FBI, however, seeks (1) a determination that the redactions asserted in the January Teletype are appropriate; (2) that the August teletype was not responsive to Plaintiff's FOIA request and should not be disclosed, or alternatively, that the redactions asserted by the FBI are valid; (3) that the FD-302 does not exist and no further search is required; (4) that the FBI's subsequent manual search of five files, and the ZYIndex search of the OKBOMB file fulfilled the FBI's responsibilities to locate responsive documents under FOIA and that no further search is required;[2] and (5) regarding the disclosure of the documents found in the subsequent manual search (the July 21, 2005 disclosure), to validate the redactions asserted by the FBI.

### III. DISCUSSION

**A. Overview**

Because of the plethora of motions and objections filed in this action, the court notes at the outset that the crux of the current dispute pertains to (1) whether the January teletype need be produced in unredacted form; (2) whether the August teletype need be produced at all; (3) whether the exemptions asserted in the 17 redacted documents produced to the Plaintiff on July 21, 2005 are valid; and (4) whether further searches must be conducted by the FBI.

Before addressing these specific documents, and to ensure that the specific motions are

---

[2] The FBI also seeks a determination that its original search was adequate because it was reasonably calculated to locate responsive documents. Further, it seeks a determination that the subsequent search was unnecessary and that the documents located in response to that search are therefore not responsive to Plaintiff's FOIA request. The court declines to reconsider its previous determination regarding the reasonableness of the initial search and the need to conduct additional manual searches.

ruled upon, the court emphasizes that it declines to revise its previous determination regarding

the FBI's initial search.  Thus, the court's previous determination that the original search was not

reasonably calculated to locate responsive documents remains undisturbed.  The court, however,

will revisit whether the asserted exemptions apply to the documents at issue in the court's May

5, 2005 Order, and the court will also address the validity of the redactions in the documents

discovered in the subsequent search conducted by the FBI.   For clarity of the record, the FBI's

Motion to Amend Order on Motion for Partial Summary Judgment or, Alternatively, for Relief

from Order is granted in part and denied in part.  In addition, the court declines to grant any of

the pending motions to strike, and it will permit the supplementations of the record that have

occurred throughout this briefing process.  While some of the information sought to be

stricken–or supplemented–is irrelevant, the court does not find any need to strike–or to preclude

the filing of–the documents.  In addition, the court declines to grant Plaintiff's motion requesting

that the court find the FBI in contempt of the court's May 5, 2005 Order.  The court will now

address the contours of FOIA and the specific documents at issue and will determine whether

any further searches are required.

**B.  FOIA**

     FOIA facilitates public access to Government documents.  *Forest Guardians v. United*

*States Federal Emergency Management Agency*, 410 F.3d 1214, 1217 (10th Cir. 2005).  "A

strong presumption exists in favor of disclosure under FOIA[,] and the Government bears the

burden of justifying the withholding of any requested documents."  *Id*.; *Sheet Metal Workers*

*Int'l Ass'n, Local No. 9 v. United States Air Force*, 63 F.3d 994, 996 910th Cir 1995).  However,

public access to Government information is not all-encompassing.  *Forest Guardians*, 410 F.3d at 1217.  Access is permitted "only to information that sheds light upon the government's performance of its duties."  *Id.*  (quoting *Sheet Metal Workers Intern. Ass'n v. United States Air Force*, 63 F.3d 994, 996 (10th Cir. 1995) (internal citation omitted)).

FOIA contains nine exemptions which, if applicable, preclude disclosure of certain types of information.  5 U.S.C. § 552(b).  The primary exemptions at issue in this action are Exemption 6, Exemption 7C, and Exemption 7D.

Exemption 6 prohibits the disclosure of information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  U.S.C. § 552(b)(6).  "Similar files" under Exemption 6 has a "broad, rather than a narrow, meaning" and encompasses all information that "applies to a particular individual."  *Forest Guardians*, 410 F.3d at 1217 (quotation marks and citations omitted).

Exemption 7C also reflects Congress' desire to protect personal privacy if the invasion of privacy that would result from the release of the information outweighs the public interest in disclosure.  *United States Dep't of Justice v. Reports Comm. for Freedom of the Press*, 489 U.S. 749, 761 (1989); *Hale v. United States Dep't of Justice*, 973 F.2d 894, 900 (10th Cir. 1992).  Specifically, Exemption 7C protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .  could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(c).

Both Exemptions 6 and 7C require a balancing test.  Under Exemption 6, the court

applies a balancing test to determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy. *Forest Guardians*, 410 F.3d at 1217.   The court must balance the public interest in disclosure against the privacy interest Congress intended the exemption to protect. *Id.* at 1218; *United States Dep't of Justice*, 489 U.S. at 776.  If there is an important public interest in the disclosure of information and the invasion of privacy is not substantial, the private interest in protecting the disclosure must yield to the superior public interest. *Id.*   If, however, the public interest in the information is "virtually nonexistent" or "negligible," then even a "very slight privacy interest would suffice to outweigh the public interest. *Id.*

In the case of records related to investigations by criminal law enforcement agencies, however, "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990).  Whether a suspect, witness, or investigator, these individuals have a strong interest in not being associated with alleged criminal activity. *See Neely v. FBI*, 208 F.3d 461, 464-66 (4th Cir. 2000); *Schiffer v. FBI*, 78 F.3d 1405, 1410 (9th Cir. 1996); *Computer Professionals for Social Responsibility v. United States Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).  In addition, law enforcement officers have substantial privacy interests in nondisclosure of names. *See Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1166 (3rd Cir 1995); *Hale*, 973 F.2d at 90; *In re Wade*, 969 F.2d 241, 246 (7th Cir. 2992); *Patterson v. FBI*, 893 F.2d 595, 601 (3rd Cir 1990).

Once a privacy interest has been identified and its magnitude assessed, the court must then balance that interest against any recognized public interests that would be served by public

10

disclosure.  *See Schiffer*, 78 F.3d at 1410.   The Supreme Court has limited the concept of "public interest" in FOIA cases to the "core purpose" of FOIA, which is to shed light on an agency's performance of its statutory duties.  *See United States Dep't of Justice*, 489 U.S. at 773; *Sheet Metal Workers Int'l Ass'n v. United States Air Force*, 63 F.3d 994, 996 (10th Cir. 1995). Thus, "the relevant inquiry is whether the requested information directly relates to and would facilitate the primary purpose of FOIA, which is to let citizens know what their government is up to."  *Forest Guardians*, 410 F.3d at 1218 (internal quotations and citations omitted).  The burden of identifying with reasonable specificity the public interest that would be served by disclosure is on the FOIA requester.  *Hale*, 973 F.2d at 900.

Courts have found that disclosure of names and addresses of names and addresses of government workers would not shed light on an agency's performance.  *See*, *e.g.*, *Hopkins v. HUD*, 929 F.2d 81, 88 (2nd Cir. 1991); *Johnson v. United States Dep't of Justice*, 739 F.2d 1514, 1519 (10th Cir. 1984), *Hale*, 973 F.2d at 900.   It will often be the case, too, that disclosure of names or identifying information about individuals who are merely mentioned in investigative reports or who are of investigative interest to the FBI will not shed light on an agency's performance.  *See KTVY-TV v. United States*,  919 F.2d 1465, 1470 (10th Cir. 1990).

Exemption 7D protects records of information compiled for law enforcement purposes which could reasonably be expected to disclose the identity of a confidential source or information furnished by a confidential source.   This exemption applies regardless of the public's interest in disclosure.  *See Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994); *McDonnell v. United States*, 4 F.3d 1227, 1257 (3rd Cir 1993).

With these legal standards in mind, the court has reviewed the documents submitted by the FBI.  While each document is listed below, the court has generally agreed with the FBI's claimed exemptions.  In other words, regarding the 7D exemptions, the court finds that disclosure to the name would reasonably be expected to disclose the identify of a confidential source or the information furnished by a confidential source.  The court is satisfied that either express or implied promises of confidentiality were made and that the information must therefore remain protected.[3]

Regarding the claimed 7C exemptions, with the few exceptions noted below, the court agrees that the redacted information contains information compiled for law enforcement purposes and that it could reasonably be expected to constitute an unwarranted invasion of personal privacy.   Thus, the court finds that there is a significant privacy interest to be protected regarding this information.  Further, the court finds that there is some–but not a great amount of–public interest in this type of information.[4]  Accordingly, in balancing the competing

---

[3]  Contrary to Plaintiff's assertions, the court concludes that the FBI's declarant, Mr. David Hardy, has the "requisite personal knowledge" of an "express promise of confidentiality" when he has gleaned that information from an examination of the records and a discussion with relevant persons.  *See Cucci v. Drug Enforcement Admin.*, 871 F. Supp. 508, 513 (D.D.C. 1994). The FBI has satisfied its burden in demonstrating that Mr. Hardy has the requisite personal knowledge in his official capacity

[4]  By concluding that there is not a great amount of public interest in this type of information, the court does not intend to minimize the importance to the public–and to Plaintiff–of determining the true facts concerning the Oklahoma City bombing and whether Plaintiff's theory is accurate.  The court, however, cannot consider Plaintiff's interest uncoupled from whether the information would shed light on the FBI's performance.  *See, e.g., Bibles v. Oregon Natural Desert Ass'n*, 519 U.S. 355 91997).  Rather, the court must determine whether the disclosure of this type of information would "contribute to the 'public understanding of the operations or activities of the government.'" *Forest Guardians*, 410 F.3d at 1218 (quoting

12

interests, the court finds–with the specific exceptions noted below–that the significant privacy

interests outweigh the public interest, as defined within FOIA case law.  Thus, the  information

shall remain in redacted form, except as noted below.

Regarding the information redacted pursuant to Exemption 6, the court, again agrees with

the FBI, with a few exceptions noted below.  The court finds that information sought to be

protected is the type of information intended to be protected by Exemption 6.  In addition,

disclosure of the redacted information constitute a clearly unwarranted invasion of personal

privacy under Exemption 6's balancing test.   The public interest, as explained above, is not

significant.  Thus, the information shall remain in redacted form, except as noted below.

## C.  SPECIFIC DOCUMENTS

### 1.       January Teletype:

The FBI claims that it would be clear legal error to require it to produce an unredacted

copy of the January teletype because it implicates the identity of, and information provided by, a

confidential source.  It claims that Exemption 7D applies, as do Exemptions 6 and 7C.   In the

alternative, it asks the court to review this document in camera.

Having reviewed the document *in camera*, along with the affidavits of David Hardy, the

court agrees with the exemptions asserted by the FBI.  Disclosure in unredacted form could

reasonably be expected to disclose the identity of and information provided by a confidential

---

*United States Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994)).   The court cannot conclude
that the disclosure of the redacted names and other identifying information of FBI agents, people
of interest, and people whose names have been mentioned  government would shed significant
light on "what the government is up to."  *Forest Guardians*, 410 F.3d at 1218.

source and would constitute a clearly unwarranted invasion of the personal privacy of FBI personnel and third parties mentioned by, and of investigative interest to, the FBI.  Further, as explained above, the court finds that the privacy rights outweigh the public interest that would be served by disclosure of this information.

> 2.     **August Teletype:**

The FBI also claims that it should not be required to produce an unredacted copy of the BOMBROB-Funding Memorandum (the "August Teletype").   It claims it is not responsive to Plaintiff's FOIA requests because the document does not refer to either Morris Dees or the Southern Poverty Law Center.   Specifically, Plaintiff's FOIA request sought, among other things,  "documents and/or records which directly or indirectly, reported upon, concerned, referenced or referred to Morris Dees' and/or the *Southern Poverty Law Centers'* involvement with and/or connection to the Elohim City, OKBOMB, BOMBROB, Tim McVeigh, Richard Guthrie, Terry Nichols, Dennis Mahon, Robert Millar, Michael Brescia, Peter Langan and/or Andreas Strassmeir, including all contacts Dees or the SPLC may have indirectly had with the foregoing individuals through informants."

While the document falls within the spirit of Plaintiff's FOIA request, the FBI accurately argues that this document does not technically fall within Plaintiff's request, as it does not mention either Morris Dees or the Southern Poverty Law Center.   While the court will therefore refrain from ordering that the FBI produce this document to Plaintiff, the court urges the FBI to voluntarily produce the document to Plaintiff at this time, given the circumstances of this case. Otherwise, the FBI will merely be postponing the inevitable in that it will be certain to receive

another FOIA request for this specific document.  Should the FBI chose to disclose this document, the court finds that the redacted information has been justifiably redacted pursuant to Exemptions 6 and 7C.

### 3.  FD-302:

Next, the FBI seeks relief from being required to produce the FD-302 prepared by FBI Special Agent Tom Linn because it claims that the document does not exist.   The court relieves the FBI from producing this document.  Having reviewed the affidavit of Agent Linn, it appears that this document does not exist.

### 4.  Documents Contained in the July 21, 2005 Disclosure by the FBI

#### a.  Exhibit 1:

Exhibit 1 is a redacted teletype dated April 25, 1995 teletype.  Plaintiff points out the fact that this document indicates that there was an undercover operative in with Timothy McVeigh and members of the various militia groups who aided and supported McVeigh, but Plaintiff wonders why, given the subject matter, there are no earlier records that have been produced by the FBI.  Plaintiff also wonders why there is no FD-302 Report of this informant when the document itself indicates that an FBI agent is ordered to interview the informant.

Plaintiff has posed some very good questions that perhaps highlight the problems with the method by which FBI searches for requested documents and/or the method by which documents are stored and indexed.  But Plaintiff's pointing to alleged omissions in the production of requested documents does not affect the validity of the FBI's redactions in this exhibit.  The court finds that the asserted 7D exemptions and the asserted 6 and 7C Exemptions

are valid.

**b. Exhibit 2:**

This exhibit is an August 16, 1995 teletype from the FBI Albuquerque Field Office to the Director concerning an informant who is reporting that an individual–whose name is redacted–may have assisted McVeigh in the Oklahoma City bombing." Plaintiff also contends that the informant is Shawn Kenny, and Plaintiff maintains that Kenny has waived any promise of confidentiality.

As the FBI has clarified–and the court will confirm–that the informant named in this document is not Shawn Kenny. Thus, the court finds that the 7D exemptions are applicable and that the asserted 6 and 7C Exemptions are also valid.

**c. Exhibit 3:**

This exhibit is a December 21, 1995 teletype from the Mobile, Alabama Field Office to FBI OKBOMB Command Post Oklahoma City. The court finds that the 7D Exemptions are applicable and that the asserted 6 and 7C Exemptions are also valid.

**d. Exhibit 4 & 4a:**

Exhibit 4 is a draft of a January 4, 1996 teletype on which there are handwritten changes/edits. Exhibit 4a is the final version of the teletype. Plaintiff contends that it demonstrates that there are other unproduced documents that must exist. While Plaintiff might be correct, the court finds that the claimed exemptions pertaining to this document are valid.

**e. Exhibit 5:**

This exhibit is a draft of a January 11, 1996 teletype to FBI Director and various field

16

offices from the FBI OKBOMB Command Post Oklahoma City.   Again, Plaintiff contends that

it demonstrates that there are other unproduced documents that must exist.  The court finds that

the claimed exemptions pertaining to this document are valid.

### f.  Exhibit 6:

This is a January 16, 1996 teletype from OKBOMB Command Post to Mobile, Alabama

Field Office.  The court finds that the claimed exemptions are valid.[5]

### g. Exhibits 7 & 7a:

Exhibit 7 is a draft of a January 20, 1996 teletype from OKBOMB Command Post

Oklahoma City to the director, and Exhibit 7a is the final version.   The court finds that the

claimed exemptions are valid.

### h. Exhibits 8, 8a, & 8b:

This is a draft of a January 26, 1996 teletype from OKBOMB Command Post to Director.

Exhibits 8a and 8b are final versions.  The court finds that the claimed exemptions are valid,

with a few exceptions.  The FBI has redacted information obtained from various newspaper

articles.   The FBI has not justified such redactions.  Therefore, the FBI is directed to produce the

final versions of this document with references to the information gleaned from newspaper

articles unredacted.

---

[5] In his January 2006 filing, Plaintiff contends that the cooperating witness discussed in Exhibit 6 is Shawn Kenny, who Plaintiff claims has waived any 7D exemption.  Plaintiff presumably intended to refer to Exhibit 7, rather than to Exhibit 6.  In any event, Shawn Kenny is not referenced in either exhibit.

**I.  Exhibits  9, 9a, & 9b:**

Exhibit 9 is a draft of another January 26, 1996 teletype from OKBOMB Command Post Oklahoma City to Director.  Exhibits 9a and 9b are the final versions, separated into two sections.  The court finds that the claimed exemptions are valid, with the exception of the information from a newspaper article.  Again, and the FBI has not justified such redactions. Therefore, the FBI is directed to produce this document with references to the information gleaned from newspaper article unredacted.

**j. Exhibit 10:**

This is a February 6, 1996 teletype form Mobile, Alabama Field Office to Oklahoma City.   The court finds that the claimed exemptions are valid.

**k.  Exhibit 11:**

This is a June 4, 1996 teletype form Mobile, Alabama Field Office to various field offices, including Oklahoma City.  The court finds that the claimed exemptions are valid.

**l.  Exhibits 12 & 12a:**

Exhibit 12 is a draft of a June 12, 1996 teletype from Command Post Denver to the Director of the FBI, and Exhibit 12a is the final version.  The court finds that the claimed exemptions are valid, with the exception of the information obtained from a newspaper article, which references excerpts from a book.  The FBI is directed to produce this document with references to the information obtained from the newspaper article unredacted.

**m. Exhibit 13:**

This is an August 2, 1996 teletype from Mobile, Alabama Field Office to Oklahoma City

18

and other field offices.   The court finds that the claimed exemptions are valid.

### n. Exhibit 14:

Exhibit 14 is a February 20, 1997 teletype from Denver Command Post to Mobile,

Alabama Field Office.  The court finds that the claimed exemptions are valid.

### o. Exhibit 15:

This is a March 27, 1997 teletype from Mobile, Alabama Filed Office to Oklahoma

Command Post.  The court finds that the claimed exemptions are valid.

### p. Exhibit 16:

This is a teletype dated April 1, 1997.  The court finds that the claimed exemptions are

valid.

### q. Exhibit 17:

This is a January 4, 1996 teletype from Director of FBI to various field offices, including

Oklahoma City.  The court finds that the claimed exemptions are valid.

## D.  Further searches:

The FBI, while arguing that it should not have been required to conduct any further

searches, notes that it has nevertheless complied with the court's May 5, 2005 Order and has

conducted a manual search of the files listed by the court–with one exception.  The FBI claims

that it has not manually searched the OKBOMB file (174A-OC-56120) because that file contains

over 1.2 million documents.  The FBI has, however, conducted a ZyIndex search of that file,

using "poverty," (to find documents containing Souther Poverty Law Center) in conjunction with

Elohim City, OKBOMB, BOMBROB, Tim McVeigh, Richard Guthrie, Terry Nichols, Dennis

19

Mahon, Robert Millar, Michael Brescia, Peter Langan and/or Andreas Strassmeir.  The FBI did

not perform the search using "SPLC," an acronym often used for the Southern Poverty Law

Center, and it did not search for Morris Dees' name.

The FBI claims that it is the FBI's general policy not to initiate a search for such

individuals without a privacy waiver or proof of death, and Plaintiff has provided neither.  It is

unclear to the court why the FBI conducted the search of all the other individuals' names, but

declined to perform the search in reference to Mr. Dees.  The FBI has not satisfied its burden in

convincing the court that the FBI  need not even search for documents containing Dees' name.

While the FBI is entitled to redact any information it claims is exempt, subject to review by the

court, the FBI shall conduct a search for such documents, similar to the search it has previously

conducted regarding the OKBOMB file.  To the extent the FBI claims that it need not conduct

the search prior to a finding by the court that the public interest outweighs any privacy rights of

Mr. Dees, the court hereby makes that finding, in light of the evidence proffered by Plaintiff,

concerning the information provided to the FBI by Mr. Dees.  The court does not, at this time,

make any determination regarding the applicability of any exemptions that the FBI might claim

in any documents discovered during this search.

Accordingly, the FBI is directed to conduct two more limited searches in the OKBOMB

file: (1) a search of the General Index and ZyIndex for "SPLC" in conjunction with the

individual names listed in Plaintiff's FOIA request; and (2) a search of the General Index and

ZyIndex for "Morris Dees" in conjunction with the individual names listed in Plaintiff's FOIA

request   The FBI may then redact any information that it claims is exempt from disclosure under

FOIA.

Also, it is troubling that so many of the documents produced by the FBI refer to FD-302s that were or should have been prepared, and the disclosed documents also refer to other attachments that at one time appear to have accompanied the document, yet these documents have not been produced.   While the FBI's failure to discover documents is not necessarily an indication of bad faith, it is puzzling that *so many* documents could be referenced but not produced.  But given the nature of Plaintiff's initial FOIA request and the searches that have been conducted by the FBI thus far, the court declines to order further searches beyond what the court has ordered above.  It appears likely, however, that the FBI has not seen the last FOIA request from Plaintiff.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that (1) the FBI's Motion to Amend Order on Motion for Partial Summary Judgment or, Alternatively, for Relief from Order [docket # 32] is GRANTED in part and DENIED in part, consistent with the discussion above; (2) Plaintiff's Motion to Strike and Motion for Finding of Civil Contempt [docket # 36] is DENIED; (3) Plaintiff's Amended Second Motion to Strike Re: Declaration of David M. Hardy and FBI Defendants' Reply Memorandum [docket # 49] is DENIED; (4) Plaintiff's Third Motion to Supplement the Record [docket # 62] is GRANTED.

The FBI need not produce the January Teletype in unredacted form.  In addition, the FBI need not produce the redacted August Teletype unless it chooses to do so voluntarily, which the court urges the FBI to do, given the specific circumstances of this case.   The FBI is relieved of

21

its obligation to produce the FD-302 that has been at issue in this case, as the document does not

appear to exist.  Regarding the 17 documents produced in the July 21, 2005 disclosure, the FBI

need not produce those documents in unredacted form, with [3] exceptions: The FBI shall

unredact certain information contained in Exhibits 8, 9, and 12 (including the draft and final

versions of those documents).   Finally, the FBI is relieved of conducting a manual search of the

OKBOMB file, but it shall conduct two additional searches of the OKBOMB file, similar to the

searches it has already undertaken, as described more fully above.  Documents that are

discovered pursuant to these searches shall be produced to Plaintiff no later than June 2, 2006.

To the extent any obligations remain on the FBI from the May 5, 2005 Order, the FBI is relieved

of those obligations.

      DATED this 29th day of March, 2006.

                            BY THE COURT:

                            _____
                            DALE A. KIMBALL
                            United States District Judge